Harriet Palethorp, Widow and Administratrix of Edward J. Palethorp, deceased, *v.* Robert Palethorp, Caroline A. Palethorp, Henry B. Palethorp, Appellants, and Joseph Hey.

| 184 | 585 |
| 198 | 625 |
| 184 | 585 |
| 206 | ² 97 |
| 206 | ²487 |
| 184 | 585 |
| 25 SC | ²417 |

*Equity—Equity practice—Equity rules—Masters—Costs.*

A decree of a court of equity based upon the report of a master appointed after the adoption of the equity rules of January 15, 1894, has absolutely nothing to support it, and is therefore a nullity.

An equity case was tried by a master in violation of the equity rules of January 15, 1894. The Supreme Court, upon appeal, set aside the decree, together with all proceedings in the cause after the case was put at issue,

and ordered the plaintiff to pay the costs made by him including the master's fee, and the defendant to pay the costs made by him including his witnesses.

Argued Jan. 18, 1898. Appeal, No. 319, Jan. T., 1897, by defendants, from decree of C. P. No. 3, Phila. Co., June T., 1894, No. 1702, dismissing exceptions to master's report. Before GREEN, WILLIAMS, MCCOLLUM, MITCHELL and DEAN, JJ. Decree set aside.

Bill in equity for partition.
The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to master's report.

*Robert Palethorp*, for appellants.

*W. A. Manderson*, for appellee.

OPINION BY MR. JUSTICE WILLIAMS, February 21, 1898:
The rules regulating the practice in equity in the several courts of this commonwealth were amended by this Court on the 15th day of January, 1894, and it was then ordered that the said amendments should take effect on the first Monday of the March following, and be applicable to all causes in equity brought, or put at issue, after that date. Among these amendments was one which provided as follows: "The office of master in chancery is hereby discontinued except in proceedings where decrees or interlocutory orders are to be executed or their execution supervised by an officer of the court." The trial of causes in equity was to be conducted before a referee or in open court, and to be conducted "as near as may be as a trial at law is now conducted." The plaintiff's bill was filed in this case between six and seven months after these amended rules went into operation. Some two months later, or on the 17th day of December, 1894, the court below appointed a master and directed that the cause be proceeded in before him to a final determination. This was about ten months after the office of master had ceased to exist as a part of the machinery for the trial of causes in equity, and conferred no authority on the appointee. The

report of the master so appointed was not filed until January 6, 1897, and the report was confirmed and the decree from which this appeal was taken was made on July 20, last. The fact is brought to our attention by an examination of this record that the equity rules have been utterly disregarded, and that there has been no trial had in this case. We can not consider a decree made under such circumstances as an adjudication upon any question to which it relates. The appointment of the master was a simple nullity. The proceedings before him were coram non judice, and therefore a nullity. The decree resting on his report has absolutely nothing to support it, and it is therefore a nullity. There is no question before us except the question whether we can sanction or overlook the brushing away of the orders of this Court in this manner whenever it may suit the convenience or the whim of the parties to trample upon them. It may be said that the defendants are in no position to raise this question now because of their appearance before and recognition of the master as an officer of the court, and that, as this case has been heard on the testimony, the result ought not now to be disturbed. But it has not been heard before any one having the right to hear it. Moreover, if we are to give to the mistakes of parties, or to their intentional disregard of our orders, the force and efficacy of regularity and law, what will become of our rules of practice? They will be set aside at will, or without purpose, by mere inattention and carelessness. We have but one thing to do in this case, and that is by no means a pleasant one. We must treat this record as it actually is, as an incurable series of mistakes, and set aside all that has been done since the appointment of the master by him, or by the judge of the court below resting upon or in any manner relating to what the master has done. We were compelled to treat a decree as a nullity because of the violation of the equity rules in the case of the Chester Traction Co. v. The P., W. & B. Railroad Company, 180 Pa. 432, and to lay down the rule that "Where an equity case has been tried in violation of the equity rules of January 15, 1894, the Supreme Court will upon appeal set aside the decree, together with all proceedings in the cause after the case was put at issue, except such as relate to the testimony of the sick, aged, absent and way-going witnesses, and will direct that each party shall pay its own costs made since the cause was

at issue." In accordance with the rule so laid down, the decree in this case is set aside for the reasons given above, and all the proceedings in the case since it was put at issue are also set aside. The plaintiff to pay the costs made by her including the master's fee. The defendants to pay the costs made by them, including their witnesses.

The record is remitted to the court below and a procedendo directed.